UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS VAN BUREN,

                Plaintiff,                        Case Number 25-11173
                                                    Honorable David M. Lawson

v.

GREGORY CORRIN, ADAM FLORY,
THOMAS LATTY, and TOWNSHIP OF
BRADY,

                Defendants.

                                         /

## **OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff Thomas Van Buren filed the present action alleging, via 42 U.S.C. § 1983, that the defendants violated the Fourth Amendment by entering onto his property to conduct an inspection. The individual defendants are officials of defendant Brady Township. They conducted the inspection under the authority of a state court order that was entered as part of a consent decree, which Van Buren later contested, that was entered by the state court to resolve a blight ordinance violation. Van Buren wrote a letter purporting to revoke his consent to the inspections. The defendants all moved to dismiss the complaint, asserting various jurisdictional and substantive arguments. The jurisdictional arguments fail, but Van Buren had not stated a viable claim under the Fourth Amendment because his efforts to withdraw his consent unilaterally, which were memorialized in a court-approved consent judgment, were ineffective, and the inspection, therefore, was reasonable as a matter of law. The motions to dismiss will be granted.

I.

According to the complaint, Van Buren resides in Brady Township, Michigan, on property viewable from a public road. The public records of the 70th District Court in Saginaw, Michigan

indicate that in late 2024, Van Buren stored several "unregistered[,] inoperative[,] or dismantled vehicles" on that property, along with "[g]arbage, junk[,] and rubbish."   ECF No. 12-3, PageID.154.  Two provisions of Brady Township's zoning ordinance prohibited such storage.  *See* ECF No. 12-1, PageID.104.  As a result, Brady Township's enforcement officer, defendant Gregory Corrin, cited Van Buren for violating those sections of the ordinance, ECF No. 12-3, PageID.154, which initiated civil infraction proceedings in the Saginaw court, ECF No. 12-4.  Defendant Adam Flory, the local prosecuting attorney, represented Brady Township throughout those proceedings; the plaintiff represented himself — at least at first.

To resolve the infraction, Brady Township and Van Buren agreed to a consent order.  ECF No. 1, PageID.3; ECF No. 16-1.  That order provided that Van Buren would (1) plead responsible, (2) pay a $75 fine, and (3) bring his property into compliance with Brady Township's ordinance by February 20, 2025.  ECF No. 16-1, PageID.317.  An additional provision, which is the focus of the present case, authorized Brady Township, "through its agents/representatives/etc.[,] . . . to conduct on-site inspections of the" plaintiff's property to ensure that he complied with the order and ordinance upon twenty-four hours' notice.  *Id.* at PageID.317-18.  And should those inspections reveal continued ordinance violations, Brady Township would be authorized to "bring [the property] into full compliance" at Van Buren's expense.  *Id.* at PageID.318.

Before the state court entered that order, Van Buren retained his present attorney.  Van Buren then objected through counsel to entry of the consent judgment on January 18, 2025, in part contending that it "propose[d] a warrantless inspection process contrary to the Fourth Amendment."  *Id.* at PageID.321.  He instead requested that the final order impose only a $75 fine for his acceptance of responsibility.  *Id.* at PageID.324.

Over that objection, on February 20, 2025, the state court entered the consent judgment that Van Buren and Brady Township initially agreed to and retained jurisdiction to enforce its terms. ECF No. 16-1. Soon thereafter, Van Buren moved to vacate the order. ECF No. 16-3. He again argued that the "judgment effectuates a warrantless inspection process contrary to the Fourth Amendment." *Id.* at PageID.327. The state court later denied that motion. ECF No. 16-4, PageID.332.

On April 18, 2025, Van Buren sent a letter, again through present counsel, to Mr. Flory entitled "Consent Withdrawn." ECF No. 1-1. That letter acknowledged that he "previously provided consent for" Brady Township to inspect his property without a warrant. *Id.* at PageID.11. The letter went on to declare that the plaintiff "withdraws all consent" to warrantless searches and threatened to file a lawsuit under 42 U.S.C. § 1983 if Township officials were to conduct the court-authorized inspections. *Ibid.* Five days later, on April 23, 2025, Corrin, accompanied by Flory and a Saginaw County Sheriff's Deputy, defendant Thomas Latty, allegedly entered Van Buren's property and inspected it.

Later that day, true to his lawyer's word, Van Buren sued Brady Township, along with Flory, Corrin, and Latty, in their individual and official capacities. He brings a single count under 42 U.S.C. § 1983, asserting that the inspection violated the Fourth Amendment because the three individual defendants conducted it without a warrant or valid consent. He also asserts that this violation stemmed from "Brady Township's failure to properly train its agents and officials regarding constitutional protections like those provided by the Fourth Amendment," and therefore seeks to hold the municipality liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). ECF No. 1, PageID.8. Van Buren asks for a judgment declaring that the defendants violated the Fourth Amendment and an injunction requiring the destruction or expungement of all photographs,

records, and data obtained during the challenged search.  Van Buren also seeks compensatory or nominal damages, as well as punitive damages against the individual defendants in their personal capacities.

The federal lawsuit triggered motions practice in both state and federal courts.  Van Buren filed a motion in the state court case seeking to stay the enforcement of the consent order "pending resolution of [his] federal lawsuit," ECF No. 12-6, PageID.171, which the state court granted, ECF No. 28-1.  The defendants countered with their motions to dismiss the plaintiff's complaint in the federal case.

II.

Although the defendants filed separate motions, the arguments mirror each other for the most part, and the overlapping arguments will be addressed at once.  The defendants begin with subject-matter jurisdictional arguments, contending first that the Court should abstain from hearing the case because the state enforcement is pending in state court. *See Younger v. Harris*, 401 U.S. 37 (1971).  Second, they contend that this Court does not have subject-matter jurisdiction because the gravamen of the plaintiff's claim amounts to an appeal of the state court order, which lower federal courts have no authority to adjudicate.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

The defendants invoke Federal Rule of Civil Procedure 12(b)(1) for their *Younger* and *Rooker-Feldman* arguments.  "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)."  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)).  "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court

takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis," but "[a] factual attack challenges the factual existence of subject matter jurisdiction." *Ibid.* The defendants' attack is a facial one.

A.

The abstention doctrine announced in *Younger v. Harris* and the cases that follow that seminal pronouncement do not require — or even authorize — abstention here. "*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity." *Doe v. Univ. of Ky.*, 860 F.3d 365, 368 (6th Cir. 2017). But its "applications are narrow and exist only in a few exceptional circumstances." *Id.* at 369. The doctrine usually is invoked to avoid upsetting state criminal prosecutions, although a state civil proceeding that effectively is akin to a criminal prosecution or circumstances may qualify when it "implicate[s] a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013).

The ordinance enforcement proceeding in the state court falls within that category of cases. *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). Therefore, abstention is appropriate if three additional conditions are satisfied: (1) the state proceeding is ongoing, (2) it implicates "an important state interest," and (3) it affords the federal plaintiff "an adequate opportunity to raise his constitutional claims." *Doe*, 860 F.3d at 371 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

The defendants cannot establish the first requirement because there is no ongoing state-court proceeding. The state ordinance prosecution was resolved by a consent judgment — a final order — and the state court indefinitely stayed the post-judgment enforcement of the judgment

"pending resolution of" this case. ECF No. 29-2, PageID.661. As this Court held in *Generis Entertainment, LLC v. Donley*, 790 F. Supp. 3d 628, 645 (E.D. Mich. 2025), an indefinite stay of the state-court proceedings pending completion of a federal case renders *Younger* inapplicable.

The defendants counter that in *Generis*, the entire state case was stayed, not just the enforcement of a judgment. But that is a distinction without a difference. With the stay of enforcement of the consent order, there is nothing left of the state case; it will sit idle until this case is resolved. Van Buren "is entitled to raise its constitutional issue *somewhere*," and an "abstention order here would set it upon an uncertain path, like Escher's ants on a Möbius loop." *Ibid.* (emphasis in original) (citing *See* M.C. Escher, *Mobius Strip II* (woodcut 1963), https://www.nga.gov/artworks/61286-mobius-strip-ii.). *Younger* abstention therefore is "not appropriate in this case." *Ibid.*

B.

The *Rooker-Feldman* doctrine posed no bar, either. That "doctrine bars lower federal courts from conducting appellate review of final state-court judgments because 28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)). "*Rooker* . . . and . . . *Feldman* hold that only the Supreme Court may review judgments entered by state courts in civil litigation." *Fowler v. Benson*, 924 F.3d 247, 254 (6th Cir. 2019). The eponymous "doctrine, therefore, bars a lower federal ... court from reviewing a plaintiff's claim when a state court's judgment is the source of the plaintiff's injury." *Ibid.*

Recent appellate decisions have emphasized the narrowness of that doctrine: "it is not an all-purpose abstention doctrine, lying in wait to untangle snarls when state and federal litigation mix." *Hohenberg v. Shelby Cnty.*, 68 F.4th 336, 339 (6th Cir. 2023). *Rooker-Feldman* does not

- 6 -

apply to parallel state and federal proceedings. *Exxon Mobil*, 544 U.S. at 293.  In cases involving "properly invoked concurrent jurisdiction," federal jurisdiction does not "vanish[]" when the state court "reaches judgment on the same or related question[.]" *Ibid.*  Instead, the doctrine is "confined to cases" where four conditions are met: (1) the federal case's plaintiff is a "state-court loser[]"; (2) the plaintiff complains "of injuries caused by state-court judgments"; (3) the state judgment was "rendered before the" federal "proceedings commenced"; and (4) the federal proceeding invites "review and rejection of those judgments." *Id.* at 284.

Regardless of the other three conditions, the fourth is not met because Van Buren does not seek review and rejection of the state court's final consent order.  Unlike in his motions in state court, in this case, Van Buren does not argue that the consent order was inherently unconstitutional. Nor does he seek a declaration that the consent order is unconstitutional or attempt to enjoin enforcement of the order. *Cf. T.M. v. Univ. of Maryland Med. Sys. Corp.*, 608 U.S. ----, ---, 146 S. Ct. 1739, 1748 (2026) (holding that the plaintiff "plainly [sought] review and rejection of [a] consent order by asking the District Court to" declare it "unconstitutional, unenforceable, and void *ab initio*" and to enjoin its enforcement (citation modified)).  Rather, he seeks damages and declaratory relief challenging the constitutionality of a search that occurred after he sent a letter purporting to withdraw his consent to inspections — "a demand [he] did not make in" state court that challenges conduct independent of the judgment. *Hohenberg*, 68 F.4th at 341; *see also HPIL Holding, Inc. v. Zhang*, 168 F.4th 944, 951 (6th Cir. 2026) ("So long as [a plaintiff] presents an independent claim, [he] is free to try to den[y] a legal conclusion that a state court has reached without facing a [*Rooker-Feldman*] barrier." (citation modified)).

The defendants push back, arguing that Van Buren's claims are barred because success on the merits would necessarily undermine the state court's consent judgment.  They reason that

because the consent judgment authorized the April 23 inspection, this Court cannot conclude that the search violated the Fourth Amendment without implying that the term authorizing the search is now invalid. But "[t]rue or false, that is not the test." *Ibid.*

The Sixth Circuit twice has rejected the defendants' conception of *Rooker-Feldman*. In *Hohenberg*, the court explained that *Rooker-Feldman* applies only when a plaintiff directly seeks "review and rejection" of a state-court judgment, "not when his victory would undermine a judgment's legal underpinnings." *Ibid.* The Sixth Circuit reiterated the point in *HPIL Holding, Inc. v. Zhang*, 168 F.4th 944 (6th Cir. 2026). There, the court likewise rejected an argument that the plaintiff's federal claims would implicitly "cast doubt on" a state-court judgment. *Id.* at 951. In doing so, it emphasized that *Rooker-Feldman* "eliminate[s] only jurisdiction to 'review and reverse' judgments, not to implicitly undermine them." *Ibid.* (quoting *Exxon*, 544 U.S. at 284).

That distinction matters here. Again, Van Buren does not ask the Court to vacate or reverse the consent judgment. He alleges that defendants violated the Fourth Amendment by searching his property after he revoked consent. Whether the consent judgment defeats that claim is a merits question, not a jurisdictional one. Therefore, the *Rooker-Feldman* doctrine does not defeat jurisdiction here.

### III.

The defendants also argue that the case should be dismissed for substantive reasons, invoking Civil Rule 12(b)(6). To survive the motion under that rule, a plaintiff "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir.

- 8 -

2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). However, before a court considers documents "integral to the claims" and that are referenced in the complaint, "it must also be clear that there exists no material disputed issues of fact regarding the relevance of the documents." *Diei v. Boyd*, 116 F.4th 637, 644 (6th Cir. 2024) (*Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012)).  "[C]ourts may take judicial notice of facts in a public record that 'are not subject to reasonable dispute' — such as the court's ultimate resolution of a prior case." *Blackwell v. Nocerini*, 123 F.4th 479, 487-88 (6th Cir. 2024); *see also Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC,* 46 F.4th 454, 457 (6th Cir. 2022) ("While the question of whether to grant a Rule 12(b)(6) motion to dismiss is typically confined to the pleadings, we may take judicial notice of other court proceedings without converting the motion into one for summary judgment.").  However, beyond those materials, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

A.

First, defendants Flory, Brady Township, and Corrin argue that collateral estoppel and *res judicata* preclude the plaintiff's claims.  Neither theory bars the claim as pleaded in the complaint.

The Full Faith and Credit Act requires federal courts to give state-court judgments the same preclusive effect they would receive in the courts of the rendering State.  *In re Calvert*, 105 F.3d 315, 317 (6th Cir. 1997) (citing 28 U.S.C. § 1738).  It provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have . . . in the courts of such State . . . from which they are taken."  *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (quoting 28 U.S.C. § 1738).  That rule applies equally to actions brought under section 1983.  *Haring v. Prosise*, 462 U.S. 306, 313 (1983) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)).  Michigan law therefore governs whether the state court's consent order and subsequent rulings concerning that order preclude Van Buren's Fourth Amendment claims.

1.

Collateral estoppel, also known as issue preclusion, is a concept that prevents a party from asserting an issue that was decided against it in a previous lawsuit.  *Kosinski v. Comm'r of Internal Revenue*, 541 F.3d 671, 675 (6th Cir. 2008).  The three defendants contend that collateral estoppel bars Van Buren's claims because the state court already litigated and resolved the legitimacy of the consent order in the first instance when it denied the plaintiff's objections to the order and motion to vacate.  Those denials included rejecting Van Buren's contention that the consent order's inspection process inherently violated the Fourth Amendment.  They argue that Van Buren's federal claim merely repackages the same challenge previously rejected in state court.  The Court disagrees.

- 10 -

In Michigan, collateral estoppel applies when (1) the parties are identical in both proceedings, (2) the first proceeding ended in a valid, final judgment, (3) the identical issue was actually litigated and necessarily decided, and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue.  *People v. Gates*, 452 N.W.2d 627, 630-31 (Mich. 1990).

The first element does not apply because when collateral estoppel "is asserted defensively," as it is here, Michigan does not require mutuality of parties.  *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 850 (Mich. 2004).  Because consent orders are valid, final judgments, the second element is met.  *Republic Bldg. Co., Inc. v. Charter Twp. of Clinton*, 81 F.4th 662, 667-68 (6th Cir. 2023).

The third element, however, is not satisfied.  Although Van Buren objected to the inspection provision before entry of the consent judgment and later moved to vacate that judgment on Fourth Amendment grounds, the issue presented here differs from the one resolved in the state proceedings in a couple respects.  The state court determined that the consent judgment could include a provision authorizing future inspections and declined to vacate that judgment, but it did not decide whether the plaintiff's subsequent April 18, 2025 letter effectively withdrew the consent incorporated into the judgment.  Nor did it determine whether the defendants violated the Fourth Amendment by conducting a warrantless search after receiving that letter.  Because those questions arose only after entry of the consent judgment and denial of the motion to vacate, they were neither actually litigated nor necessarily decided in the prior proceeding.

For the same reason, the fourth element is not satisfied.  Van Buren did not have a full and fair opportunity to litigate the constitutional validity of the inspection in that case because, at the time of the state proceedings, the challenged search had not yet occurred, Van Buren had not yet

attempted to withdraw consent, and no dispute existed concerning the legal effect of that withdrawal.

Collateral estoppel does not bar the plaintiff's claim in this case.

2.

*Res judicata*, also known as claim preclusion, is a slightly different concept. "Claim preclusion, or true *res judicata*, refers to [the] effect of a prior judgment in foreclosing a subsequent claim that has never been litigated, because of a determination that it should have been advanced in an earlier action." *Mitchell v. Chapman*, 343 F.3d 811, 819 n.5 (6th Cir. 2003). Here, the defendants' *res judicata* argument is substantially the same as their collateral estoppel argument, and for the same reasons, it fails.

Under Michigan law, *res judicata* applies when (1) the prior action was decided on the merits, (2) the actions involve the same parties or their privies, and (3) the matter raised in the second action was, or could have been, resolved in the first. *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004) (citing *Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222, 225 (Mich. 2001)). Michigan applies the doctrine broadly. *AuSable River Trading Post, LLC v. Dovetail Sols., Inc.*, 874 F.3d 271, 274 (6th Cir. 2017). That rule extends to federal claims that could have been asserted in the prior state proceeding. *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 819 (6th Cir. 2010).

The third element is where the defendants' argument falters. Van Buren's section 1983 claim did not accrue until after he attempted to withdraw the consent incorporated into the consent judgment and the defendants thereafter conducted the challenged search. Because those events occurred only after the state court entered the consent judgment and denied Van Buren's motion to vacate, the plaintiff could not have asserted this claim in the prior proceeding.

Van Buren's Fourth Amendment claim is not precluded by either collateral estoppel or *res judicata*.

B.

Defendant Latty contends that, as a sheriff's deputy acting based on a judicial order, quasi-judicial immunity shields him from suit for the claim against him individually.  He is correct.

Judges are entitled to absolute immunity from suit for "actions taken in [their] official judicial capacity." *Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 518 (6th Cir. 2023).  That immunity also extends to "non-judicial officers who perform 'quasi-judicial' duties," *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (quoting *Joseph v. Patterson*, 795 F.2d 549, 560 (6th Cir. 1986)), like law enforcement officers who "act pursuant to a valid court order," *Cooper v. Parrish*, 203 F.3d 937, 950 (6th Cir. 2000); *see also Reguli v. Guffee*, 371 F. App'x 590, 596 n.4 (6th Cir. 2010) (holding that two officers who executed a body attachment order were entitled to quasi-judicial immunity); *Goldberg v. Maloney*, 57 F. App'x 664, 666 (6th Cir. 2003) (holding that officials who carried out a probate judge's prejudgment attachment order and seized records and property from the plaintiffs' home were entitled to quasi-judicial immunity).

The discussion in *Cooper v. Parrish* illustrates why Latty is entitled to quasi-judicial immunity.  In *Cooper*, local prosecutors filed several civil complaints seeking to shut down several nightclubs for violating public nuisance statutes.  203 F.3d at 943.  The prosecutors obtained temporary restraining orders purporting to permit them to "enter and seize eight of the nightclubs that featured nude dancing." *Ibid.*  Acting on those orders, several law enforcement officers later raided and seized the nightclubs and their business offices until the orders expired. *Ibid.*  One of the nightclubs' owners and employees sued some of the officers for those raids, alleging that they violated their constitutional rights. *Id.* at 944.  The *Cooper* court held that because the officers

- 13 -

were acting based on an order and did not exceed the scope of their authority, they were entitled to quasi-judicial immunity.  *Id.* at 950.

Cooper's reasoning maps onto this case.  Latty, like in *Cooper*, acted based on an order — the consent order — when he entered Van Buren's property.  Also like in *Cooper*, the allegations here do not reveal that Latty exceeded the scope of the order, which purported to permit Brady Township's agents, its representatives, and others similarly situated to enter Van Buren's property and conduct compliance inspections.  ECF No. 16-1, PageID.317-18.

Van Buren counters that the consent order did not authorize *Latty* to enter the property because it authorized "only Brady Township (and its agents) to take certain steps involving" the plaintiff's property, not a Saginaw County sheriff's deputy like Latty.  ECF No. 24, PageID.538. But the order language is not that narrow: it permitted Brady Township, "through its agents/representatives/etc.," to "conduct on-site inspections of the" plaintiff's property to ensure that he complied with the order.   ECF No. 16-1, PageID.317-18.  The import of that clause — signaled by the word "etc." after "agents/representatives" — is that it allowed all those working on Brady Township's behalf or assisting it to enter and inspect the plaintiff's property.   That language is "broad enough to cover" Latty.  *Cooper*, 203 F.3d at 950.

Because Latty was acting on a judicial order when he entered Van Buren's property, quasi-judicial immunity bars the plaintiff's individual-capacity claim against him.

C.

Focusing on the core Fourth Amendment claim, the individual defendants argue that they are entitled to qualified immunity.  The qualified immunity defense may be raised at any stage of the case.  A government actor is entitled to qualified immunity from suit at the motion to dismiss stage of the case if the facts pleaded in the complaint show that the official's conduct did not violate

- 14 -

"clearly established . . . constitutional rights of which a reasonable person would have known." *Jackson v. City of Cleveland*, 64 F.4th 736, 745 (6th Cir. 2023) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  The plaintiff carries the burden of pleading facts on both those elements, which the Court may address in either order. *Jones v. Naert*, 121 F.4th 558, 564 (6th Cir. 2024) (citing *Jackson*, 64 F.4th at 745).  Here, Van Buren fails to meet the first requirement because the facts pleaded in the complaint do not establish a Fourth Amendment violation.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  As its text reveals, the Fourth Amendment bars government officials from (among other things) unreasonably searching a person's home.  *Mockeridge v. Harvey*, 149 F.4th 826, 833 (6th Cir. 2025).  That prohibition extends to a home's "curtilage," which "is 'the land immediately surrounding and associated with the home'" and "'considered part of [the] home itself for Fourth Amendment purposes.'"  *Id.* at 834 (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)).  To determine whether officials violate that command, courts must conduct a two-part analysis.  *Id.* at 833.  First, a court must determine whether a search occurred at all.  *Ibid.* (citing *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019)).  Second, if a search occurred, a court must evaluate whether it was reasonable.  *Ibid.*

The complaint easily demonstrated that a search occurred.  A government official searches a property by either invading an area in which a person has a reasonable expectation of privacy or by physically trespassing upon a constitutionally protected area to obtain information.  *Taylor*, 922 F.3d at 332 (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring), and citing *United States v. Jones*, 565 U.S. 400, 404–05 (2012)); *Kanuszewski v. Michigan Department of Health and Human Services*, 141 F.4th 796, 808 (6th Cir. 2025).  Entering a person's curtilage

to gather information regarding compliance with governmental regulations therefore constitutes a search under the Fourth Amendment. *Mockeridge*, 149 F.4th at 834-35. That is precisely what the complaint alleges: the defendants entered Van Buren's fenced curtilage to determine whether he complied with the blight ordinance and the consent order.

Was the search reasonable? Warrantless searches "are *per se* unreasonable under the Fourth Amendment." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citation modified). As a result, "warrantless searches . . . violate the Fourth Amendment unless a recognized exception to the warrant requirement applies." *Bambach v. Moegle*, 92 F.4th 615, 628 (6th Cir. 2024). One such exception is a search conducted with valid consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *Herschfus v. City of Oak Park*, 150 F.4th 489, 497 (6th Cir. 2025). To establish valid consent, an official must show that the consent was voluntary. *United States v. Alexander*, 954 F.3d 910, 918 (6th Cir. 2020) (citing *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009)).

Here, the consent judgment's inspection provision — which was based on Van Buren's initial agreement in state court — gave the defendants authority to inspect the property. Van Buren voluntarily agreed to the consent order's inspection provision — which expressly authorized warrantless inspections of his property to verify compliance with the ordinance — in exchange for resolving the civil-infraction proceeding. That consent judgment created not only a binding, enforceable order but also a contract. *Republic Bldg. Co., Inc.*, 81 F.4th at 667-68; *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 519-20 (1986); *see also Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 229 (6th Cir. 2019) ("'A consent decree has attributes of both a contract and of a judicial act.'" (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983))). This sort of contractual exchange provides valid consent to warrantless inspections, even in the face of the property owner's later protests. *Zap v.*

- 16 -

*United States*, 328 U.S. 624, 627-29 (1946), *judgment vacated on other grounds by Zap v. United States*, 330 U.S. 800 (1947) (per curiam) (upholding objected-to inspection when a party's contract with the government provided for prospective inspections); *see also Herschfus*, 150 F.4th at 497 (citing *Zap* and tracing other consent-based inspection regimes). And nothing in the complaint plausibly alleges that the defendants exceeded the scope of the inspection provision by pursuing a purpose other than ensuring compliance.

VanBuren's contention that his April 18, 2025 letter revoked consent does not prevail. Drawing on broad language from *Painter v. Robertson*, 185 F.3d 557 (6th Cir. 1999), that a person who consents to a search may "at any moment may retract his consent," *id.* at 567, he argues that notwithstanding the consent order's binding inspection term, he could, at any time, successfully revoke his consent through nonjudicial means like his letter. However, Van Buren plucks *Painter*'s language out of context. *Painter* involved nothing more than contemporaneous oral consent to enter a bar during a police encounter. It did not involve consent embodied in a binding judicial order resolving litigation. Nor did it involve a contractual undertaking defining the parties' respective rights and obligations. Unsurprisingly, every authority *Painter* relied upon addressed the same ordinary consent-search context rather than consent supplied through a judicial decree. *Ibid.* (citing *Florida v. Jimeno*, 500 U.S. 248, 251-52 (1991); *United States v. Gant*, 112 F.3d 239, 242 (6th Cir. 1997); *United States v. Mitchell*, 82 F.3d 146, 151 (7th Cir. 1996)). Read in context, *Painter* simply recognizes that a person who has given ordinary, nonjudicial, contemporaneous consent may withdraw that consent. Simply put, in context, *Painter*'s brushstrokes were not as broad as the plaintiff construes them to be.

Van Buren's argument ignores the fact that the agreement he was trying to undo was a consent judgment. As discussed earlier, that consent decree is both a contract and a judgment.

- 17 -

*Evoqua*, 940 F.3d at 229. The settlement feature of the instrument brings with it the reality that it cannot be modified unilaterally. *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 372, 666 N.W.2d 251, 257-58 (2003) (explaining that "the freedom to contract does not authorize a party to *unilaterally* alter an existing bilateral agreement. Rather, a party alleging waiver or modification must establish a mutual intention of the parties to waive or modify the original contract"). Modification of settlement agreements require the "mutual consent of the parties." *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 399 (6th Cir. 2015).

The Sixth Circuit's approach to consent given in exchange for lesser penalties in the criminal context reinforces the point. For example, similar to the consent order here, people frequently agree, as a condition of probation and in exchange for reduced criminal penalties, to submit to warrantless, suspicionless searches. *See United States v. Tessier*, 814 F.3d 432, 433 (6th Cir. 2016); *see also United States v. Hernandez*, --- F.4th --, ---, No. 25-1517, 2026 WL 2056323, at *2 (6th Cir. July 16, 2026). Extending *United States v. Knights*, 534 U.S. 112 (2001), the Sixth Circuit has held that where, as here, consent provisions of those orders clearly permit warrantless, suspicionless searches, and the challenged search was conducted for a "legitimate law enforcement purpose," a warrantless, suspicionless search accords with the Fourth Amendment. *Tessier*, 814 F.3d at 433-45. And such a probationary provision may be terminated or modified only by a court order or by completing and satisfying the term of probation — not by a unilateral withdrawal of consent. *See United States v. Collins*, 171 F.4th 830, 834-36 (6th Cir. 2026). Consent orders operate no differently. Once entered, their terms remain binding unless modified by the court or satisfied. *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383-84 (1992).

The defendants' April 23, 2025 inspection of Van Buren's property did not violate his Fourth Amendment rights. The defendants possessed valid consent to conduct warrantless

searches through the consent order's inspection term.  Van Buren's April 18, 2025 letter was ineffective to withdraw that consent.  Therefore, Van Buren's Fourth Amendment claim against the individual defendants fails.

D.

Finally, Van Buren brings a municipal liability claim against Brady Township, both directly and by pleading official-capacity claims against Flory and Corrin.  *Warman v. Mount St. Joseph Univ.*, 144 F.4th 880, 891 n.4 (6th Cir. 2025) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)) ("An official-capacity suit 'is, in all respects other than name, to be treated as' a suit against the entity 'of which [the named defendant] is an agent.'").  Those claims cannot survive because a municipality cannot be liable under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), without an underlying constitutional violation.  *Chambers v. Sanders*, 63 F.4th 1092, 1101-02 (6th Cir. 2023).  Because Van Buren has not established a constitutional deprivation, his municipal liability claim against Brady Township also must be dismissed.

IV.

The Court has subject-matter jurisdiction over the case, but the complaint does not plead facts sufficient to support a plausible federal cause of action.  In addition, defendant Thomas Latty is entitled to quasi-judicial immunity.

Accordingly, it is **ORDERED** that the defendants' motions to dismiss the complaint (ECF Nos. 12, 16, 23) are **GRANTED**.

It is further **ORDERED** that the case is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson<br>DAVID M. LAWSON<br>United States District Judge

Dated:   July 24, 2026